UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DAMION MOORE,

                Petitioner,                Case No. 1:10-cv-1188

v.                                            Honorable Robert Holmes Bell

CAROL HOWES,

                Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner James Damion Moore presently is incarcerated at the Lakeland Correctional Facility. Following a jury trial, he was convicted of assault with intent to murder, MICH. COMP. LAWS § 750.83, first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), two counts of forgery, MICH. COMP. LAWS § 750.248, and two counts of uttering and publishing, MICH. COMP. LAWS § 750.249. On June 21, 2001, he was sentenced by the Eaton County Circuit Court to a prison term of 15 to 30 years on the assault conviction and 10 to 20 years on the home-invasion conviction, together with four terms of 1 year and 11 months to 14 years for the forgery and uttering and publishing convictions.

Petitioner appealed his convictions to the Michigan Court of Appeals, raising the same ground raised in the instant habeas petition:

I. THE EVIDENCE WAS INSUFFICIENT TO PROVE ALL THE ESSENTIAL ELEMENTS BEYOND A REASONABLE DOUBT AND THUS THE MICHIGAN COURT OF APPEALS ERRED IN THEIR ANALYSIS AND CONCLUSION OF FACT RESULTING IN ITS AFFIRMING OF DEFENDANT'S CONVICTION.

(Pet. at 4, Page ID #3.) In an unpublished opinion issued January 13, 2009, the court of appeals affirmed the convictions. (Mich. Ct. App. Op. (MCOA Op.) at 1-2, Page ID ##37-38.) Petitioner sought leave to appeal to the Michigan Supreme Court, again challenging the sufficiency of the evidence. The supreme court denied leave to appeal on September 11, 2009.[1]

Petitioner filed his habeas application in the Eastern District of Michigan on November 23, 2010. The action was transferred to this Court on December 2, 2010.

---

[1] Information obtained from the electronic docket maintained by the Michigan Court of Appeals. *See* http://coa.courts.mi.gov/resources/asp/viewdocket.asp?casenumber=279742&inqtype=public&yr=0&yr=0.

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

Petitioner's sole argument is that insufficient evidence was presented to support his convictions. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The Michigan Court of Appeals discussed the issue as follows:

Defendant challenges the sufficiency of the evidence on his convictions. Defendant's forgery and uttering and publishing convictions arose when he deposited two checks drawn on the account of a former girlfriend into his own bank account. Defendant maintains that the girlfriend authorized him to write the checks and to deposit them into his account. The girlfriend denied ever giving him the checks and denied ever authorizing him to make any deposit into his account. Defendant's assault and home invasion convictions arose from a subsequent incident in which an intruder entered the girlfriend's apartment, chased her into the hall, and stabbed her. On the day of the assault, the girlfriend told the police that defendant was the assailant. She also identified defendant as the assailant at trial. Defendant denied any knowledge of the assault and told police that at the time of the assault he had been at home, then had gone fishing.

We review defendant's sufficiency claim de novo, examining the record to determine whether a reasonable juror could have found that the prosecutor proved the elements of the charged crimes. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). Here, the record is largely a credibility contest between defendant and his former girlfriend. A challenge to a witness's credibility goes to the weight of the evidence. *People v Naugle*, 152 Mich App 227, 235-236; 393 NW2d 592 (1986). We defer to the jury's superior "position to decide the weight and credibility to be given" the former girlfriend's testimony. *People v Palmer*, 392 Mich 370, 376; 220 NW2d 393 (1974). By finding defendant guilty of the charged crimes, the jurors demonstrated their conclusion that they found the former girlfriend's testimony credible.

Moreover, there was ample circumstantial evidence to convict defendant. As to the forgery and uttering and publishing charges, a police officer testified that defendant told police that the former girlfriend had written the checks for him. However, the girlfriend's name was misspelled on the checks. Defendant subsequently claimed that the girlfriend had given him blank checks. From this evidence, the jury could reasonably determine that defendant was not credible, and that he intended to defraud his former girlfriend. Similarly, on the home invasion and assault charges, a police officer testified that when police first interviewed defendant about the charges, he professed no knowledge of the assault. Despite professing no knowledge, defendant made reference to the assault being at the girlfriend's apartment. The officer testified that the police had not informed defendant of the location of the assault. Further, on the day of the assault, police

> found chewing gum that contained defendant's DNA on the peephole of the apartment next to the girlfriend's apartment. This evidence, combined with the police officer's testimony and the other circumstantial evidence, was sufficient to support the jury's verdict. See *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993) ("Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.").

(MCOA Op. at 1-2.)

Although it cited only Michigan cases, the court of appeals clearly applied the correct constitutional standard in its review of the sufficiency of the evidence. *See, e.g., People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000) (citing *Jackson* and articulating the identical test). In addition, as previously discussed, the factual findings of a state court, including an appeals court, are entitled to a presumption of correctness, which Petitioner may rebut only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 at 407 n.4. Petitioner does not dispute, much less dispute with clear and convincing evidence, any fact recited by the Michigan Court of Appeals. Because he has failed to meet his burden of rebutting the facts recited by the court of appeals, the Court accepts those facts as true. Based on those facts, ample evidence supported each of Petitioner's convictions.

Under Michigan law, a person commits forgery when he "falsely makes, alters, forges, or counterfeits a public record . . . with intent to injure or defraud another person." MICH. COMP. LAWS § 750.248(1). "The elements of the crime of forgery are: (1) an act which results in the false making or alteration of an instrument (which makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure. The key is that the writing itself is a lie." *People v. Kaczorowski*, 475 N.W.2d 861, 864 (Mich. Ct. App. 1990). Petitioner did not deny that he deposited the checks to his account. He argued instead that his former girlfriend authorized him

to do so. The victim, however, testified that she did not authorize the checks to be written or deposited. The evidence also showed that the handwriting on the checks was not that of the girlfriend and that the girlfriend's name was misspelled. Given these facts, the Michigan Court of Appeals reasonably applied established Supreme Court precedent in concluding that a reasonable jury could infer that the victim was telling the truth, that Petitioner was not credible, and that he intended to defraud his girlfriend by writing himself checks from her account.

> Similarly, the offense of uttering and publishing is defined as follows:
>
> A person who utters and publishes as true a false, forged, altered, or counterfeit record, deed, instrument, or other writing listed in section knowing it to be false, altered, forged, or counterfeit with intent to injure or defraud is guilty of a felony. . . .

MICH. COMP. LAWS § 750.249(1). The elements of uttering and publishing are: (1) knowledge on the part of the defendant that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment. *People v. Shively*, 584 NW2d 740, 743 (Mich. Ct. App. 1998).

As the Michigan courts have recognized, the offense of forgery and the offense of uttering and publishing share an element: the intent to defraud. *Kaczorowski*, 475 N.W.2d at 864. As previously discussed, the evidence was sufficient to allow a reasonable jury to infer such an intent. In addition, if the jury believed the victim's testimony that she had not written or authorized the checks, it reasonably could conclude that Petitioner knew that the checks were false. Further, Petitioner did not contest that he had presented the checks for deposit in his own account. In sum, the state court reasonably concluded that the evidence was sufficient to support each element of the offense of uttering and publishing.

The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. *See People v. Sands*, 680 NW2d 500, 509 (Mich. Ct. App. 2004); MICH. COMP. LAWS § 750.110a(2). As the state court recognized, the victim testified that an intruder, whom she identified as Petitioner, broke into her apartment, chased her into the hall, and stabbed her. That testimony alone was sufficient to support a jury finding beyond a reasonable doubt that (1) Petitioner entered the apartment without permission, (2) Petitioner actually committed an assault, and (3) the victim was present in the apartment at the time. In addition, the victim's testimony was supported by Petitioner's incriminating statement to police and the presence of Petitioner's DNA on a piece of chewing gum that had been placed over the peephole of the apartment next door to the victim. The state court determination that sufficient evidence supported the conviction for home invasion constituted a reasonable application of clearly established Supreme Court precedent.

Finally, the elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *See People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999). Murder is the killing of another with malice and without mitigation, justification or excuse.[2] *People v. Goecke*, 579 N.W.2d 868, 878

---

[2] Evidence that a defendant's actions were taken in the heat of passion and with sufficient provocation may mitigate an intentional killing from murder to voluntary manslaughter. *See People v. Pouncey*, 471 N.W.2d 346, 349-50 (Mich. 1991); MICH. COMP. LAWS § 750.321. In addition, an intentional killing may be justified if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. *See People v. Heflin*, 456 N.W.2d 10, 21 (Mich. 1990).

(Mich. 1998). In the case of murder, the element of malice may be proved by an intent to kill, an intent to inflict great bodily harm, or a wanton disregard of the likelihood that the defendant's behavior would cause death or great bodily harm. *Id.* However, as previously discussed, to prove assault with intent to murder, the prosecution was required to prove the intent to kill to prove the requisite malice. *People v. Crawford*, 340 N.W.2d 323, 324 (Mich. Ct. App. 1983).

Accepting the victim's statement as true, Petitioner entered the victim's apartment, chased her into the hall, and stabbed her. The victim's statement clearly supports the jury's finding that an assault occurred. In addition, the victim testified that she was stabbed with a knife. A jury may infer the intent to kill based on the use of a dangerous weapon. *See People v. Dumas*, 563 NW2d 31, 36 (Mich. 1997). Further, the circumstances of the assault – where the intruder (Petitioner) entered the apartment and promptly chased the victim with a knife – also supports both an inference that Petitioner intended to kill and an inference that such a killing was not justified or done under circumstances that reduce it to a lesser crime. In addition, as the Michigan Court of Appeals noted, the placement of chewing gum containing Petitioner's DNA on the peephole of the neighboring apartment also supports the inference that he intended to kill without justification. Therefore, the state court's conclusion that the evidence was sufficient to support all elements of the offense of assault with intent to murder constitutes an entirely reasonable application of established Supreme Court precedent.

## **Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: January 7, 2011                       /s/ Robert Holmes Bell
                                                                   ROBERT HOLMES BELL
                                                                   UNITED STATES DISTRICT JUDGE